IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Michael P. Kane, | ) C/A No.: 9:14-508-RMG-WWD |
| | ) |
| Plaintiff, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| vs. | ) |
| | ) |
| Beaufort County Sheriff's Dept. and James T. Prusinowski, | ) |
| | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on Defendants' motion for summary judgment. Plaintiff has responded in opposition to the motion and Defendants have filed a reply. In addition, the undersigned held a hearing on September 22, 2014, and ordered additional briefing. In this posture, the matter is ripe for disposition.[1] For the reasons which follow it will be recommended that the motion be granted.

## DISCUSSION

This is a Section 1983 action brought by Plaintiff against the Beaufort County Sheriff's Department and Beaufort County Sheriff's deputy James T. Prusinowski (the "deputy"). By stipulation, the third named Defendant, Beaufort County itself, was dismissed. The case was instituted in the state court and removed to this court. Plaintiff alleges that the deputy placed him under false arrest and violated his rights by arresting him without

---

[1] The court's initial review of the summary judgment pleadings led to the inexorable conclusion that the summary judgment record was not complete. For example, Plaintiff's brief referred to excerpts of his deposition but those excerpts were not attached as exhibits or otherwise provided to the court. The court has now required that those excerpts be included in the record. In addition, at the hearing on September 22, 2014, the court ordered that Defendant Deputy Prusinowski's deposition be included in the record. By letter dated October 1, 2014, however, counsel for Deputy Prusinowski advised the court that a transcript of Defendant's deposition does not exist. (See Dkt. No. 28.) On October 9, 2014, Deputy Prusinowski submitted his affidavit to the court. (See Dkt. No. 29-1.)

probable cause and used excessive force in the arrest. For his injuries, Plaintiff shows that he sustained a broken nose and septum; that he had reconstructive surgery; and that he suffers from chronic rhinitis, has a permanent scar, and has periodic apnea episodes.

This case arises from an incident after Plaintiff called the sheriff to complain that he felt threatened by his niece who lives at Plaintiff's residence. The deputy responded to Plaintiff's residence, but he left after speaking with Plaintiff and his niece. Nevertheless, the deputy returned to Plaintiff's residence a few minutes later, again at Plaintiff's request. The video and audio recording of the incident shows considerable discussion between the deputy and Plaintiff, primarily centering on Plaintiff's assessment that he thought his niece would threaten him again. The deputy was preparing to leave when he heard Plaintiff exclaim that he would shoot his niece if she came back into the house. This statement was made after considerable discussion between the deputy and Plaintiff, and at a time when Plaintiff plainly expressed frustration that he felt he was without recourse against the niece. See Plaintiff's deposition transcript, p.13 ("She won't be in this house again tonight."). This statement was also made as the deputy was about to leave the scene and the deputy asked Plaintiff "If she comes in. . . ." to which question Plaintiff responded "I'll shoot her." Id.[2] With this statement, the interaction between the two men took a decided turn. The deputy confronted Plaintiff and took him by the arm when Plaintiff pulled away. The deputy moved Plaintiff outside and began a takedown maneuver. As Plaintiff was continuing to struggle with the deputy, the movement in the takedown slammed Plaintiff's face against a car in the driveway and his injuries resulted. Plaintiff was charged with resisting arrest

---

[2] The audio and video recording of the interaction between the deputy and Plaintiff is available in the record, as is the printed transcript of the audio portion of the recording.

and assault and battery third degree. The assault and battery third degree charge was dismissed in Magistrate's Court prior to trial; the solicitor summarily dismissed the resisting arrest charge prior to the preliminary hearing. Plaintiff's civil action followed.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). The application of this standard follows.

**False Arrest/False Imprisonment**[3]

The undersigned recommends granting Defendants' motion as to Plaintiff's claims for false arrest and false imprisonment. Section 1983 actions premised on alleged false arrest and/or false imprisonment claims are analyzed as unreasonable seizures under the Fourth Amendment. See, e. g., Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002)

---

[3]To the extent Plaintiff seeks to assert a Section 1983 claim against Defendant Beaufort County Sheriff's Department, such a claim fails. Pursuant to Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978), a municipality or other local government entity may be liable under Section 1983 for the violation of a plaintiff's constitutional rights, but only where the constitutionally offensive actions of employees are taken in furtherance of some municipal policy or custom. See Monell, 436 U.S. at 694; see also Knight v. Vernon, 214 F.3d 544, 552 (4th Cir. 2000). Plaintiff has not identified any such policy or custom, so Defendant Beaufort County Sheriff's Department is not liable under Section 1983.

(recognizing that a plaintiff alleging a Section 1983 false arrest claim needs to show that the officer decided to arrest him without probable cause to establish an unreasonable seizure under the Fourth Amendment); Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001) (claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment"). The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citations omitted). "[W]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Id. (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)). "[T]he reasonableness of a seizure under the Fourth Amendment should be analyzed from an objective perspective." Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 184 n.5 (4th Cir. 1996) (citing Graham v. Connor, 490 U.S. 386, 396-97 (1989)). "[T]he subjective state of mind of the defendant, whether good faith or ill will, is irrelevant in this context." Id. (citing Graham, 490 U.S. at 397); see also Devenpeck, 543 U.S. at 153 ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."); Whren v. United States, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

A review of the record in this case convinces the undersigned that Defendants are entitled to summary judgment on Plaintiff's claim of false arrest and false imprisonment. The audio and video of the incident reveal Plaintiff's extreme frustration with the fact that Defendant would not arrest his niece, who also lived in the home with Plaintiff. Plaintiff's speech is slow and slightly slurred, and he repeats–at least twelve times–that he feels threatened by his niece. Deputy Prusinowski states in his Affidavit that Plaintiff was intoxicated. (<u>See</u> Prusinowski Aff. ¶ 14.) The video and audio of the incident reveals the following exchange:

> MR. KANE: Okay, our business is done.
>
> OFFICER PURSINOWSKI: Thank you, sir.
>
> MR. KANE: Thank you.
>
> OFFICER PURSINOWSKI: Have a nice night.
>
> MR. KANE: You do the same.
>
> OFFICER PURSINOWSKI: Thank you, sir.
>
> MR. KANE: Yes, sir. **She won't be in this house again tonight**.
>
> OFFICER PURSINOWSKI: Okay. If she comes in and breaks in–
>
> MR. KANE: **I'll shoot her**.
>
> OFFICER PURSINOWSKI: Step out of–step out of the car.
>
> MR. KANE: I didn't mean that. You know that. No, don't do this to me, man. Please don't. Please don't.
>
> OFFICER PURSINOWSKI: Step out of the car.

(Dkt. No. 24 at 13-14 of 30 (emphasis added).)[4]

As noted above, Plaintiff was charged with resisting arrest and assault and battery in the third degree. Plaintiff, who was clearly agitated, did not want his niece to reenter his home. Of course, the niece lived in the very same home, and she was also present on the scene. Plaintiff unequivocally told Defendant that his niece "won't be in this house again tonight," and he further stated, "I'll shoot her." Upon hearing that threat, Defendant told Plaintiff to step out of the house; Plaintiff was noncompliant. As noted above, the niece was present on scene, and the Defendant confirmed the niece heard Plaintiff say he would shoot her. On these facts, the undersigned concludes that Defendant is entitled to summary judgment.

Regardless of whether probable cause *actually* existed in the instant case, Defendant is entitled to qualified immunity. The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a

---

[4] Upon a close review of the video of the incident, the undersigned concludes that Pursinowski told Plaintiff to "step out of the house," not "step out of the car."

reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009).

Given the Plaintiff's state of agitation, and the fact that Plaintiff threatened to shoot his niece–who resided with Plaintiff and was in fact on the premises–the undersigned is unable to say it would have been clear to a reasonable officer that arresting Plaintiff was unlawful.[5] See Hunter v. Bryant, 502 U.S. 224, 227 (1991) ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to [qualified] immunity." (internal quotation marks and citations omitted)); Wiley v. Doory, 14 F.3d 993, 995 (4th Cir. 1994) ("[I]f there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity."); Wheeler v. Lawson, 539 F.3d 629, 639 (7th Cir. 2008) ("Qualified immunity protects those officers who make a reasonable error in determining whether there is probable cause to arrest an individual."); see also S.C. CODE ANN. § 16-3-600(E)(1) ("A person commits the offense of assault and battery in the third degree if the person unlawfully injures another person, or offers or attempts to injure another person with the present ability to do so."); State v. Sutton, 340 S.C. 393, 397, 532 S.E.2d 283, 285 (2000) ("Assault has been defined as an 'attempted battery' or an unlawful attempt or offer to commit a violent injury upon

---

[5] At the hearing on September 22, 2014, the undersigned ordered additional briefing on conditional threats. The undersigned has reviewed the supplemental briefing and finds Defendant's position to be more persuasive. In the undersigned's opinion, the mere fact that Plaintiff stated he would shoot his niece *if* she came back to the house does not render the threat any less of a true threat, especially given that the niece lived there. See, e.g., United States v. Lockhart, 382 F.3d 447, 452 (4th Cir. 2004) ("Miss Lockhart's threat, while grammatically conditional—it begins with the phrase '[i]f George Bush refuses to see the truth and uphold the Constitution'—does not indicate what events or circumstances would prevent the threat from being carried out beyond the broad statement that the President must 'see the truth' and 'uphold the Constitution.'").

7

another person, coupled with the present ability to complete the attempt or offer by a battery. Under this definition of assault pointing a toy gun at someone or withholding insulin from a diabetic would not be an AIK. However, the Court has on at least two occasions defined an assault as placing another in apprehension of harm." (citations omitted)); State v. Peer, 320 S.C. 546, 552, 466 S.E.2d 375, 379 (Ct. App. 1996) ("The term 'breach of the peace' is a generic one embracing a great variety of conduct destroying or menacing public order and tranquility. In general terms, it is a violation of public order, a disturbance of the public tranquility, by any act or conduct inciting to violence. Although it includes acts likely to produce violence in others, actual violence is not an element of breach of peace. . . . Whether conduct constitutes a breach of the peace depends on the time, place, and nearness of other persons. The right of a person to use his own property does not entitle him to violate the peace and comfort of others in the vicinity." (citations omitted));[6] Matter of McGee, 278 S.C. 506, 509, 299 S.E.2d 334, 334-35 (1983) ("While words alone do not constitute an assault, if by words and conduct a person intentionally creates a reasonable apprehension of bodily harm, it is an assault." (citations omitted)). Accordingly, the undersigned recommends granting Defendant's Motion for Summary Judgment as to the claim for false arrest and false imprisonment.

**Excessive Force**

---

[6]Plaintiff makes much of the fact that Plaintiff was not arrested for or charged with breach of the peace. This fact is not a material one. See Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) (Sotomayor, J.) ("Following Devenpeck [v. Alford, 543 U.S. 146 (2004)], we conclude here that a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.").

8

"A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard." Plumhoff v. Rickard, 134 S.Ct. 2012, 2020 (2014), citing Graham v. Connor, 490 U.S. 386 (1989). The determination of the "objective reasonableness" of a seizure under the Fourth Amendment "requires analyzing the totality of the circumstances." Plumhoff, 134 S.Ct. at 2020 (noting that objective reasonableness "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." citing Graham, 490 U.S. at 396). In Plumhoff, a police officer in West Memphis, Arkansas found that Donald Rickard was driving a car with only one operating headlight. When Rickard's car was stopped, the officer saw that the windshield had an indentation roughly the size of a head or a basketball. The officer saw glass shavings on the dashboard of Rickard's car leading police to suspect that someone had been struck, and police saw beer in Rickard's car. Rickard told the officer that he had not been drinking, but he sped off when the officer asked him to step out of the car. A chase followed with a total of six officers in pursuit. The chase continued despite the officers attempting a rolling roadblock; Rickard and the officers were swerving through traffic at over 100 miles per hour and they passed more than two dozen cars. Rickard's car hit a police car and then hit a second police car. Rickard, now in danger of being cornered, shifted into reverse in an attempt to escape. By this time, a policeman with his gun in hand, was pounding on the passenger-side window, Rickard's car hit yet another police car, his tires were spinning, and his car was rocking back and forth indicating that he was

9

accelerating even though his bumper was flush against a police car. Officer Plumhoff fired three shots into Rickard's car but Rickard managed to keep driving onto another street forcing another officer to step out of the way to avoid being hit. Two other officers fired 12 shots toward Rickard's car, making a total of 15 shots fired during the incident. Rickard lost control of his car and crashed into a building. Both Rickard and his passenger were killed by some combination of gunshot wounds and injuries suffered in the crash.

Rickard's surviving daughter sued the six officers involved in the chase alleging excessive force in violation of the Fourth and Fourteenth Amendments. She argued that the Fourth Amendment did not allow police to use deadly force to terminate the chase, and second, that the degree of force was excessive. 134 S.Ct. at 2020-21. Her excessiveness argument was based on the number of shots police fired - 15 total. Id. The Supreme Court said that objective reasonableness under the Fourth Amendment is analyzed from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight. From this perspective, the Court allows for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation. The Court noted that "Rickard's outrageously reckless driving posed a grave public safety risk." 134 S. Ct. at 2021. When the shots were fired, "all that a reasonable police officer could have concluded was that Rickard was intent on resuming his flight and that, if he was allowed to do so, he would once again pose a deadly threat for others on the road." Id. at 2022. With this analysis, the Court said that "the police acted reasonably in using deadly

force to end [the risk to public safety.]" Id. Moreover, even with the total of 15 shots being fired, the Court said that "[i]t stands to reason that, if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." Id.

Last of all, the Court said that "[w]e have held that [the officers'] conduct did not violate the Fourth Amendment, but even if that were not the case, [the officers] would still be entitled to summary judgment based on qualified immunity." Id. at 2022-23. An official sued under Section 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was "clearly established" at the time of the challenged conduct. A defendant cannot be said to have violated a clearly established right unless the contours of the right were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. That is to say, "existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate." Id. at 2023 (internal citations omitted). On the circumstances these police officers faced in the high speed chase, "it was not clearly established that it was unconstitutional to shoot a fleeing driver to protect those whom his flight might endanger." Id.

The Plumhoff Court relied on its decision in Graham v. Connor, 490 U.S. 386 (1989) in analyzing the objective reasonableness of a Fourth Amendment arrest or seizure. In that case, Graham, a diabetic felt the onset of an insulin reaction. He asked a friend to drive him to a convenience store to get some orange juice to counteract the reaction. At the

11

store, Graham saw a line ahead of him so he asked to be driven to a friend's house instead. M.S. Connor, a Charlotte, North Carolina police officer saw Graham hurriedly enter and leave the convenience store. Connor suspected that something was amiss so he followed the car Graham was in and made an investigatory stop. The driver told Connor that Graham was suffering from a sugar reaction; Connor told Graham and his driver to wait until he could find out what happened at the store. As Connor was calling for backup assistance, Graham got out of his car, ran around it twice, and sat down on the curb where he passed out briefly. Several other police officers came on the scene; one of them rolled Graham over on the sidewalk and handcuffed his hands tightly behind his back. This officer ignored pleas to get Graham some sugar. Several officers put Graham face down on the hood on his driver's car when Graham asked them to check his wallet for his diabetic decal. He was told to shut up and one of the officers shoved his face down against the hood of the car. He was thrown headfirst into a police car, but when the officers learned that Graham had done nothing wrong at the store they drove him home and released him. During his encounter with police, Graham sustained a broken foot, cuts on his wrists, a bruised forehead, and an injured shoulder. Graham claimed to have developed a loud ringing in one ear. He sued the officers under Section 1983 alleging that they used excessive force in making the investigatory stop.

The Supreme Court said that the Fourth Amendment is the source of protection against excessive force claims in the context of an arrest or an investigatory stop of a free citizen. 490 U.S. at 394 (Fourth Amendment guarantees citizens the right to be secure in

their persons against unreasonable seizures of the person. . . .the reasonableness of a particular seizure depends not only on when it is made, but also on how it is carried out.)(internal citations and quotation marks omitted). Fourth Amendment case law "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 396. Fourth Amendment reasonableness "required careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. The reasonableness inquiry is an objective one: the question is whether the officer['s] actions are objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." Id. at 397. Evil intentions on the part of the officer will not make an objectively reasonable use of force unconstitutional, nor will good intentions make an objectively unreasonable use of force constitutional. Having announced the proper standard for judging police conduct, the Supreme Court remanded the case to the lower court for application of that standard.

The application of the reasonableness standard here leads to the conclusion that there was no constitutional violation. The deputy faced a clearly agitated and frustrated complainant who was upset at his niece who lived in his house. Despite the deputy's efforts to explain to Plaintiff that there was nothing the deputy could do about the complaints - three others at the house told the deputy that they heard no threats and the niece was a

lawful resident of the Plaintiff's house - the deputy asked Plaintiff what he would do if the niece returned to the house. In no uncertain terms, Plaintiff said that his niece would not be in this house tonight and that he would shoot her. Faced with this serious offer of violence which posed an immediate threat to the safety of the niece, the deputy was objectively reasonable in attempting to take Plaintiff into custody. Moreover, when Plaintiff resisted and tried to pull away from the deputy, the deputy acted reasonably in trying to restrain Plaintiff with the takedown maneuver. The confines of the area, whether in Plaintiff's house or on the porch or in the yard at the door of the house, and in the proximity of the car at the door meant that forcing Plaintiff to comply with the officer's commands forced Plaintiff's face onto the hood of the car. It is unfortunate that such a serious injury resulted but the Constitution was not violated.

**State Law Claims**

Plaintiff has also asserted state law claims in his Amended Complaint. (See Dkt. No. 1-1.) Given the undersigned's recommendation concerning Plaintiff's federal claims, the undersigned recommends dismissal of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3). See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); see also United States ex rel. Scott v. Metropolitan Health Corp., 375 F. Supp. 2d 626, 647 (W.D. Mich. 2005).

**RECOMMENDATION**

It is therefore RECOMMENDED, for the foregoing reasons, that Defendants' motion for summary judgment (Dkt. No. 15) be GRANTED as to Plaintiff's federal claims, and that Plaintiff's state law claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

IT IS SO RECOMMENDED.

_____
WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

October 21, 2014
Charleston, South Carolina

**The parties' attention is directed towards the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The petitioner is advised that he may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting the advisory committee's note to Rule 72 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.")).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk of Court**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).