IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael P. Kane,                       )<br>                                                  )<br>                          Plaintiffs,     )<br>                                                  )<br>v.                                              )<br>                                                  )<br>Beaufort County Sheriff's Dept.   )<br>and James T. Prusinowski,          )<br>                                                  )<br>                          Defendants.  )<br>_____ ) | C.A. No. 9:14-508-RMG<br><br>**ORDER** |

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants, Beaufort County Sheriff's Department and James T. Prusinowski, a deputy in the department, violated Plaintiff's constitutional rights during a visit to his home in the early morning hours of October 7, 2010. The case is before this Court on the Report and Recommendation ("R&R") of the Magistrate Judge, submitted October 21, 2014 (Dkt. No. 33), which recommends that the Motion for Summary Judgment (Dkt. No. 15) be granted. Defendants filed Objections to the R&R on November 24, 2014 (Dkt. No 35) and Defendants filed a Reply on November 14, 2014 (Dkt. No. 36). For the reasons stated herein, the Court declines to adopt the R&R, GRANTS the Motion for Summary Judgment as to the arrest without probable cause claim, and DENIES the Motion for Summary Judgment as to the excessive force claim.

**Background**

On summary judgment proceedings, the Court takes the facts in the light most favorable to the nonmoving party, as presented in the Complaint and the Response to the Motion for Summary Judgment. Plaintiff Kane is a resident of Beaufort County. His household includes his niece, also an adult and resident of Beaufort County, with whom, during the late night of October 6, 2010, and the early morning of October 7, 2010, he was engaged in a dispute regarding her

having guests at their home. (Dkt. No. 16 at 2). Kane called 911 twice over the course of the evening, complaining that he felt threatened and unsafe with his niece in the house. Defendant Deputy Prusinowski responded to both calls in person; his conversation with the niece was not recorded, but a video of the second visit shows Kane alleging his niece has threatened him with a beer bottle, that he feels unsafe, and that he does not want her to reenter the house. *Video*, filed with the Court as Exhibit to Dkt. Nos. 16 and 15-1 at 1:42:30-1:46:00. Prusinowski informed Kane that he did not intend to take action against his niece and that he would not remove her from the home as Kane wished. Prusinowski further informed Kane that he would not keep his niece from entering the house, and that Kane would be arrested and taken to jail if he "react[ed]" to his niece's threats by "clock[ing]" her. *Id.* at 1:46:00-1:46:45.[1]

The two men became frustrated with one another, but wished each other good night in outwardly polite terms. *Id.* at 1:47:03-1:47-10 ("Mr. Kane: Okay, our business is done. Officer Prusinowski: Thank you, sir. Mr. Kane: Thank you. Officer Prusinowski: Have a nice night. Mr. Kane: You do the same. Officer Prusinowski: Thank you, sir.") However, the encounter took a turn for the worse when Kane stated that his niece wouldn't "be in this house again tonight." Prusinowski began to ask "If she comes in and breaks in – " and Kane stated clearly, "Fine. I'll shoot her." Prusinowski then instructed Kane to step out of the house and began an "arm bar takedown" in order to arrest him. Kane can be heard on the recording saying "I didn't mean that. You know that. No, don't do this to me, man. Please don't. Please don't." *Video* at 1:47:20-1:47:31. During the ensuing scuffle, Prusinowski broke Kane's nose against a car that

---

[1] Defendants' attorneys have provided a transcription of the video at the Magistrate Judge's request; however, the transcript has numerous errors and the Court refers directly to the video and declines to rely on the transcript. Defendants' Motion for Summary Judgment also states that Plaintiff said he would "beat the crap out of" his niece (Dkt. No. 15-1 at 2), but the Court has been unable to discern these words on the recording, and they do not appear in the transcript. The recording of a deposition of Prusinowski has apparently been lost in a fire, and only portions of a deposition of Kane have been submitted to the Court.

2

was parked just outside the house and put Kane in handcuffs. Photos and video after the incident show Kane generally bruised and bleeding from his face, and he alleges "numerous lacerations, fractures and contusions to his face, nose, eyes, lips which required immediate medical attention and follow-up care and treatment." (Dkt. No. 1-1 at ¶ 8). He further alleges that he suffered "multiple injuries to his face, eyes, nose, lips, neck, back and arms requiring medical attention, causing pain and suffering and mental anguish, and will likely continue to suffer now and in the future." (*Id.* at ¶ 11). Although the sound recording of the entire incident is reasonably clear, the visual video footage is not illuminating since it is taken from a dash cam at some distance from the men, and its view is often blocked by bystanders.

Plaintiff filed his Complaint in state court in February 2012, and an Amended Complaint in February 2014. He brings three claims of action. First, that Defendant Beaufort County was grossly negligent in failing to restrain its deputy from assaulting him and in restraining Plaintiff, using excessive force, and failing to use reasonable care and caution. (Dkt. No. 1-1 at ¶¶ 9-11). Second, that Defendant Prusinowski is liable for false arrest and false imprisonment because there was no probable cause for Kane's arrest. (*Id.* at ¶¶ 12-17). And third, that Defendant Prusinowski is liable for violations of the Fourth and Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, because he effectuated an arrest without probable cause and using excessive force. (*Id.* at ¶¶ 18-21).

The case was removed to federal court on February 25, 2014 (Dkt. No. 1) and assigned to a Magistrate Judge for pretrial proceedings pursuant 28 U.S.C. 636(b) and Local Civil Rule 73.02(B)(2) DSC. Defendants filed a Motion for Summary Judgment on June 25, 2014 (Dkt. No. 15), Plaintiff filed a Response on July 6, 2014 (Dkt. No. 16), and Defendants filed a Reply on July 17, 2014. On September 22, 2014, the Magistrate Judge held a motion hearing and

directed the parties to submit supplemental briefs on the nature of the threat made by Plaintiff at the time of the complained-of incident. Both parties submitted supplemental filings on October 2, 2014 (Dkt. Nos. 26, 27).

## Analysis

### A. Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1). To the extent Petitioner fails to point to a specific error in the R & R and simply makes conclusory objections, the Court need not conduct a *de novo* review. *Smith v. Washington Mut. Bank FA*, 308 Fed. Appx. 707, 708 (4th Cir. 2009) ("The court need not conduct de novo review . . . 'when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations.'") (quoting *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982)).

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d

1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### B. Discussion

#### 1. Probable Cause for Arrest

Plaintiff argues in his Complaint that all charges against him were summarily dismissed, which demonstrates that no probable cause existed for the charges, and therefore no probable cause existed for his arrest.

Plaintiff was initially charged with resisting arrest and assault and battery in the third degree, but the charges were "*nolle prossed*" (dropped) on May 11, 2011 (Dkt. No. 15-1 at 2). Defendants argue in the Motion for Summary Judgment, Supplemental Brief in Support of Motion for Summary Judgment (Dkt. No. 27), and Reply (Dkt. No. 36) that probable cause supporting the arrest also existed for breach of the peace, a common law offense that is "a generic term, embracing a great variety of conduct destroying or menacing public order and tranquility." (*E.g.* Dkt. No. 27 at 1, citing *State v. Randolph*, 239 S.C. 79, 83 (1961).

5

The parties dispute whether Kane's comments about shooting his niece were sufficiently "public" or to constitute a breach of the peace. *See, e.g.* Dkt. No. 16 at 4 ("Breach of peace is a violation of public order, a disturbance of public tranquility, by an act or conduct inciting to violence. . . The crux of the offense, and whether it constitutes a breach of the peace, depends on the time, place, and nearness of other persons." (citations omitted)). However, it is unnecessary for purposes of the probable cause analysis to find that his threat was actually made within earshot of the niece. The undisputed facts show that officer had already responded to two calls concerning domestic violence. Kane was persistent in arguing that he would not allow his niece in the house again, and specifically asked Prusinowski what would happen if he responded to her next provocation by clocking her. And after Prusinowski specifically told him he would be arrested if he reacted physically to his niece, Kane specifically stated that he would shoot her if she entered the house again.

For a threat to constitute probable cause sufficient to support an arrest, the threat need not itself constitute a crime of which Kane could be convicted; it is sufficient for purposes of this analysis that the threat established probable cause that Kane intended to commit a crime. Here, shooting his niece would constitute at the least assault and potentially manslaughter or murder. Probable cause to make a warrantless arrest exists when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in the circumstances shown, [to conclude] that the suspect has committed, is committing, or *is about to commit* an offense." *Ware v. James City Cnty., Virginia*, 652 F. Supp. 2d 693, 703 (E.D. Va. 2009) *aff'd sub nom. Ware v. James City Cnty., Va.*, 380 F. App'x 274 (4th Cir. 2010); *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979) (emphasis added). Although probable cause demands "more than mere suspicion, . . . evidence sufficient to convict is not required." *Taylor v. Waters,* 81

6

F.3d 429, 433 (4th Cir. 1996). Therefore, "if a person is arrested when no reasonable officer could believe, in light of the contours of the offense at issue, that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right . . . ensues." *Rogers v. Pendledon,* 249 F.3d 279, 290 (4th Cir. 2001). *See also Brown v. Gilmore,* 278 F.3d 362, 370 (4th Cir. 2002) (overturning a district court that denied summary judgment to a police officer who arrested a woman refusing to move her vehicle from a road it was blocking and explaining that, "we recognize that encounters such as this one come charged with emotion. The parties generally arrive at court with different versions of events, reflecting the different vantage points of those involved. Without minimizing the dignitary concerns of those arrested and without granting carte blanche to those making the arrest, the Supreme Court has mandated that we respect the objectively reasonable conduct of those charged with the duty of maintaining public peace.")

For the same reasons, Plaintiff's arguments in the supplemental brief (Dkt. No. 26 at 4-9) are equally unavailing. His position is that he should not have been arrested because his statement did not constitute a criminal "threat" or an "assault" pursuant to federal or state law, and therefore "no offense occurred." (*Id.* at 7). Even if a prosecutor were unable to prove all of the elements of a criminal threat, including the fact that Kane actually owned a gun and was therefore capable of carrying out the attack he threatened, Defendant Prusinowski's constitutional responsibilities in responding to the threat require only that he reasonably believed there was probable cause to arrest Kane, and Kane's own threats and intimations of violence were sufficient to constitute such probable cause.

In sum, to prove an absence of probable cause, Kane must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that he was violating or about to violate

7

the law. This he has failed to do, and his Section 1983 Fourth Amendment claim against Defendant Prusinowski is hereby dismissed.

### 2. Excessive Force

Plaintiff also alleges that Defendant Prusinowski's method of restraining him was unjustified in its tactics and intensity. According to Plaintiff's account of the events shown on the video, the deputy:

> "[S]wiftly opens a closed screen door, violently advances into the Plaintiff's residence, grabs the Plaintiff, runs him out of his house in an arm bar and slams himf ace-first into a parked car in the driveway. The Plaintiff suffered a broken nose and septum, so severe as to trequire immediate medical attention at the emergency room. The Plaintiff was bleeding profusely. the Plaintiff had to wait for five days for the swelling to recede to have necessary reconstructive surgery. As a result of the injuries, the Plaintiff suffers from chronic rhinitis, has a permanent scar and has periodic apnea episodes. Plaintiff has expended well over ten thousand dollars to date in medical treatment as a result of the Defendants' sudden and violent assault."

Dkt. No. 16 at 2-3. The Fourth Amendment's prohibition on unreasonable seizures includes the right to be free of "seizures effectuated by excessive force." *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006). Whether an officer has used excessive force is analyzed under a standard of objective reasonableness. *Scott v. Harris*, 550 U.S. 372, 381 (2007); *see also Kentucky v. King*, 131 S.Ct. 1849, 1859 (2011). In considering whether an officer used reasonable force, a court must focus on the moment that the force is employed. *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996).

Plaintiff relies on *Rowland v. Perry*, 41 F.3d 167, arguing that Defendant Prusinowski's reaction to a passing comment was unreasonable under the circumstances. *Rowland* involved an individual who, after picking up a lost five dollar bill, was taken down by a police officer who used a wrestling maneuver to throw weight against the plaintiff's leg until it "cracked." The

8

Court noted in that case that it was "impossible to escape the conclusion that a man suffered a serious leg injury over a lost five dollar bill" and that the man "posed no threat," being unarmed, and relatively passive and mentally deficient. *Id.* at 174. The case is not a particularly apt one, as Kane's comments suggested a much more serious threat than that present in *Rowland*. Nonetheless, enough factual disputes exist in the present case to save it from a summary judgment in favor of the defendants.

Defendants' Motion for Summary Judgment fails, as a whole, to take the facts as presented by Plaintiff, and instead relies on a number of disputed facts surrounding the arrest process and the application of force. For example, Defendants state that Plaintiff "pulled away from the officer's grip and tried to flee to another room" (Dkt. No. 15-1), and that Plaintiff was "belligerent," both of which are material factual conclusions that are disputed by Plaintiff. Plaintiff also argues that there was a dramatic size disparity between the two men, that the officer was equipped with a gun and a taser, and that the distance between the house and the car was such that Prusinowski would have to act with significant force and intent to propel Kane into the vehicle and cause the injuries alleged. (*E.g.* Dkt. Nos. 27 at 6; 16 at 10-11).

As the Supreme Court has made clear, this conflict between subjective views of a series of events does not prove the Plaintiff's case. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier,* 121 S.Ct. at 2158. "If courts refused to permit the use of proportionate force in these circumstances, we would be inviting any suspect who is unhappy about an arrest to resist that arrest in the hopes that the officers will simply desist rather than risk liability." *Brown v. Gilmore,* 278 F.3d 362, 369-70 (4th Cir. 2002). However, because certain relevant details of the encounter are not visible on the video available, and because they are not

9

offered as true by the Plaintiff, the Court cannot rely on Defendants' description of the events for purposes of its summary judgment analysis. Defendants' motion for summary judgment is therefore denied as to the excessive force claim.

### 3. Qualified Immunity

Defendants argue that Prusinowski is entitled to qualified immunity because his conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." (Dkt. No. 15-1 at 5, quoting *Turmon v. Jordan*, 405 F.3d 202, 204 (4th Cir. 2005)).

As to the legality of the arrest, is unnecessary to reach the question of qualified immunity since no constitutional violation took place. *Saucier v. Katz*, 533 U.S. 194, 194 (2001) ("The initial inquiry is whether a constitutional right would have been violated on the facts alleged, for if no right would have been violated, there is no need for further inquiry into immunity.").

The Court next considers qualified immunity as to the excessive force claim. It would be inappropriate at this stage to find there is no dispute of the material facts as to whether Defendant Prusinowski's assessment of Plaintiff, particularly in light of the apparent size difference between the two men and Kane's immediate, tape recorded retraction of his threat, was reasonable enough as a matter of law to render the force used constitutional. This is because "[d]isputed facts are treated no differently in this portion of the qualified immunity analysis than in any other context." *Vathekan v. Prince George's Cnty.*, 154 F.3d 173, 180 (4th Cir. 1998) (citing *Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995) and *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)). Accordingly, "summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants." *Id.*

10

## Conclusion

The Court has reviewed the R&R, the full administrative record in this matter and the relevant legal authorities. For the reasons stated herein, the Motion for Summary Judgment is GRANTED as to the Section 1983 unreasonable seizure claim against Defendant Prusinowski and DENIED as to the Section 1983 excessive force claim. In addition, since the Motion for Summary Judgment does not address Plaintiff's gross negligence claim against the Beaufort County Sheriff's Department (Claim One) or the false arrest claim (Claim Two), which appears to be against both defendants, the Court therefore takes no action respecting those claims, which will go forward with the Section 1983 excessive force claim.[2]

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

January 2*, 2015
Charleston, South Carolina

---

[2] The Court construes only these two claims as involving Defendant Beaufort County Sheriff's Department since under 42 U.S.C. § 1983, only a "person" may be sued. A department is not a person subject to suit under § 1983. See Carter v. Georgetown County Sheriff's Department, 2009 WL 1393509 at *3 (D.S.C.2009) ("It is well settled that only 'persons' may act under color of state law, therefore, a defendant in a § 1983 action must qualify as a 'person.'").

11